The next matter, No. 25-1598, President and Fellows of Harvard College v. Harvard Graduate Students Union, UAW, Local 51183. At this time, would Counsel for the Appellant please come to the podium and introduce himself on the record, if he can. Good morning, and may it please the Court, my name is Robert Fisher for the President and Fellows of Harvard College. I would like to reserve three minutes for rebuttal, please. Okay, you may, and you may proceed. Thank you, Your Honor. This appeal is about three words, employed by Harvard. Now, I'll get into the three main arguments as to why the arbitration award should be vacated, but I just want to take a step back and talk about those words. The parties were before the National Labor Relations Board. They agreed, in an election agreement, that only students who were employees could vote in the election to determine whether or not the union, the appellee, could represent them. After an election, the Labor Board certified that union as the exclusive bargaining representative of employees in the unit. And the election agreement said that to be in the unit, a student has to be employed by Harvard. And when the parties then negotiated a collective bargaining agreement, that CBA, Article I, the Recognition Clause, referenced the NLRB proceeding, and then proceeded to explain the union is the representative of employees, and then three separate times says the student has to be employed by Harvard, and then excludes all other employees under the Act. I don't think there's any dispute that that word act is a reference to the National Labor Relations Act. We're here to vacate an arbitration award. The arbitrator essentially held that students who do research in the psychology department, under the guidance of a faculty member, must be put in the bargaining unit. So, some students are employees, some students are not, and some students who are not employees can still do research. But that's not what the arbitrator did. She essentially said, everybody's in. Wasn't the arbitrator trying to determine, based upon the language of the CBA, who fit within the definition of people entitled to be members of that bargaining unit? So she was doing a contract interpretation, which is what she is supposed to do. No, Your Honor, that's not what she did. So, Harvard made it very clear to her that the question... If we agree with the district court that that's what she did, why is that wrong? I don't think that's what the district court said. The district court, if you read his decision, says, well, perhaps she could have thought this, and then she could have thought this, and she could have thought this. There's a series of inferences that the district court adopted, but acknowledged that the arbitrator herself never went down that road. And what we do know is what the arbitrator did say about the issue of whether or not these students were actually employees, which was, I disagree. Those are her words. I disagree that I have to revisit what she referred to as settled matters. And yet, the result of her award is, she says, put these people in the bargaining unit. So, effectively, she leapfrogged over the question. And whether it's an NLRA question, meaning, are these employees under the Act? She leapfrogged over that. Or if the question is, are they employed by Harvard under the language of Article I of the Recognition Clause? She didn't interpret that either. I mean, what the judge did was he went out of his way to come up with – the district court thought his job was to imagine some explanation for what the arbitrator did. But he didn't say she found that they were employees. She didn't say she was interpreting the employed by language. He was engaging in a series of inferences about what she might have meant and might have done. But that's not what she did. But isn't the question whether the arbitrator arguably construed the contract? So, on the question of does the award draw its essence from the agreement, yes, that's the question. Does her interpretation plausibly come out of the language of the contract? Okay, so if that's the case then, did she arguably construe the contract by looking to what their responsibilities were, looking to comparably situated individuals, and determine that they qualified as employees? No. What she interpreted was whether they met the definition of a research assistant. And we can debate whether she was looking at it under Article I or under Article II, but Article I has two different requirements. A student has to be employed by Harvard and be employed as a research assistant. But why isn't that arguably construing? Even if she got it wrong, why isn't that arguably construing? Well, it's not a question of whether she got it wrong. I mean, if the question were, I'm not arguing she misapplied the facts. She didn't apply the language. I mean, she expressly said, I'm not going there. So I don't think it's a question of did she get it right or wrong. She just said, I don't have to decide that issue and I'm not going to decide the issue. So your point is that she skipped over Article I entirely in that and she needed to construe employee under Article I. Yes, Your Honor. She skipped over the requirement that individuals be employed by Harvard to be in the bargaining unit. But even skipping over that requirement, our case law says that if the arbitrator gets it wrong, then that is what the parties have bargained for. It still doesn't answer whether she was arguably construing it the way she saw it. Your Honor, I would characterize the court's standard as whether or not she plausibly interpreted the language of the contract. And here she didn't do that. This isn't a question of whether or not the interpretation was right or wrong. She just didn't do it. She basically said, I don't have to. I'm not going to. But in doing that, she's interpreting it. Well, Your Honor, then the question is, well, what was she doing then? There's two potential assumptions you can make. Assumption one is she didn't care whether they were employees or not. And if that's the answer, that's clearly wrong because that's what the contract says. And the union hypothesizes in its brief, well, maybe employed by is so ambiguous it could mean not employed by. But there's a plausibility standard. So if, in fact, her silence means she thinks non-employees are in the contract, Article I clearly says otherwise. The other possible assumption is she just — But even if she gets it wrong, that's not grounds to vacate the arbitration. Well, it is — so, Your Honor, just I want to take a step back. The standard of review on drawing the essence is whether she's plausibly interpreted the language of the contract. I agree with that. But there's another issue here, which is let's assume for the moment she's making a determination about what the bargaining unit is. That is squarely within the jurisdiction of the National Labor Relations Board. And she didn't have authority to essentially redefine the bargaining unit. The Labor Board has a process by which somebody can say, hey, we think — I'm sorry. She interpreted that as the parties that that issue has already been settled. And her job was to determine if these students fell within the category that Harvard and the union had already settled. So, Your Honor, those are the words that she used. It begs the question what she meant by that. But settled — I mean, if settled — what she said is, well, you all dealt with this before the Labor Board and in bargaining. And she could mean the board has already defined what the contours of the unit are. And if that's what she meant, then that expressly means she couldn't do what she did. Or if she thought that somehow these issues had been decided by the board, they clearly hadn't. And, in fact, the Ph.D. students who are on a dissertation completion fellowship, DCF, the parties agreed before the board, those students couldn't vote. They weren't in the bargaining unit. And yet her order would place them in the bargaining unit. And so whatever she meant by settled matters, it can't mean that she thought somebody had already decided that these individuals are students. I'm sorry, that these students were actually employees. So the substantive — I want to just go back to the substantive arbitrability point, if I could. The fundamental problem with what she did, and without even saying it, was she leapfrogged over the question of whether they're employees. And we're not suggesting she was supposed to decide that issue. The point is that that should have been a guardrail. That should have been a stopping point. And at that point, she should have said, look, I don't get to decide what the bargaining unit is. That's the labor board's job. But that's not — Can't you agree by contract to include certain persons within the bargaining unit who wouldn't otherwise have been covered? Your Honor, that's correct. The parties could agree to that. But there's two things I want to say about that. One is there is no finding by the arbitrator or the court that there was some agreement to put non-employees, students who are just doing research as part of their academic career, to put them in the bargaining unit. Nobody said there was such a thing. The only thing the unions pointed to is a parenthetical in Article 2 that talks about students on rotations. And the graduate students in the psych department don't do rotations. So that couldn't mean there was an agreement to put these students in the bargaining unit. Nor would it work for the folks in the DCF. Because if you're in a DCF, your job is to write your dissertation. To the extent you have a job and to the extent you're working for somebody, it's for yourself. And there's nothing about that parenthetical that says, notwithstanding what Article 1 says, Article 2 somehow puts them in. So you're right. There could be an agreement. But there's nothing like that here. And so going back to what Judge Sorokin said below, he said, well, maybe the parties could have agreed with that. But he didn't say there was an agreement. He didn't find there was one. He was hypothesizing, essentially, how one could get there. But that's not the award that this arbitrator wrote. Now, I just want to address this court's decision, the Labor Relations Division versus Teamster case, and about the role of a reviewing court. Specifically, that case talks about that it's the arbitrator's result that matters. It's not necessarily the rationale. And that the court can enforce an award if there's some plausible interpretation or some explanation of what the arbitrator did. May I continue the thought? One minute. Sure, Your Honor. Thank you. That case doesn't give a reviewing court carte blanche to come up with some theory that the arbitrator never wrote. It's really sort of saying, look, can we read in which the arbitrator did write something that supports that she's interpreting the contract? And that isn't here. And that's why this case isn't an issue about how she interpreted it. It's an issue about she didn't interpret it at all. Thank you. Thank you. Thank you, counsel. At this time, would counsel for the appellee please introduce himself on the record to begin? Thank you, Your Honors. Patrick Bryant here for Harvard Graduate Students Union. May it please the court. I want to address a few issues, and I was not planning on spending too much time on the arbitrator's interpretation because I think it is so well within the established standards of what this court permits and tolerates as to what an arbitrator may interpret, and that it is made very clear in cases that you are not required to foreclose any ambiguity or possible issue or complication that may result from that in order to uphold the ward. But I do want to say at the beginning I believe Harvard respectfully misrepresented to you what the arbitrator did in the decision. She did not refuse to interpret the language of employed by. She did not refuse to interpret the language of Article I. What she refused to do was determine as a threshold matter whether employees meet the student workers at issue, meet the common law employment test. That is it. And I don't think it is fair for anyone to be able to read her case and consider she was not arguably construing Articles I and Articles II. With regard to the facts of those cases... Did the arbitrator ever really look at what the word employee meant in Article I? No, I don't think defined it in that way, but the courts in this case, the public policy in favor of arbitration under 301 does not allow courts to determine did she actually look and parse the language. But I will say by implication from what she said, what is not disputed by Harvard is that there are employees who are not eligible to vote in the election because they are on scientific rotations. They are now included in the bargaining unit. The arbitrator found, and Harvard does not dispute, that there are STEM laboratory-based students who are in the bargaining unit as research assistants and even though they might be working on a fellowship internally or externally. Harvard does not dispute, as she found and cannot, that there is the Gershom lab where it was found that basically four graduate students were doing the exact same thing, the exact same research. Two of them were in because they are STEM-based students, but the psychology doctoral students were not. By necessary implication, what she is saying is if the parties understood and put these people in the unit through the well-accepted, judicially-approved standard of past practice, then that by definition means that they are considered by the parties to be employed by Harvard and to qualify as research assistants. That she did not pedantically lay out what is the necessary and only implication from her reasoning is not an excuse to reverse the award. Harvard has presented to you no cases under Section 301 of federal law to say that an arbitrator is precluded from addressing these issues or that an arbitration award may be vacated. The irony of Harvard's argument, it is extolling the primacy of the National Labor Relations Board and is also asking you to take a decision that prohibits and prevents the National Labor Relations Board from doing it. And they are relying on a case in which the Supreme Court overturned the National Labor Relations Board, the Pittsburgh plate glass case. What they are saying is this should be thrown out. The cases are very clear. Even if there is a representation issue, and we don't think it is, we don't think it's a representation issue under the NLRA, it's what the parties agreed to, there are cases after cases that say, that we've cited in our brief, Gallagher, the Puerto Rico case, it also refers to the Kerry case of the Supreme Court, arbitration remains because it could have a pervasive curative effect. All of those cases also say, if someone is upset about that, you go to the National Labor Relations Board. In the Apollo Systems case of the National Relations Board, the employer filed a UC petition. It was the employer that said, hey, we don't like this. They said, we're going to defer to arbitration. And they said, and if someone has a problem with that, what the decision is, you come back to us for the National Labor Relations Board to determine to the degree it deals with a statutory issue. And they also indicated, and we'll refer that and review that under our highly deferential standard, which is similar to the standard in this case under 301, where you accept the findings, interpretations, and you determine whether it is palpably wrong. Other cases that are cited, even in their reply brief, St. Mary's, it's the same thing. All the cases are, if you're upset with what the arbitration award says, if you think it infringes on the rights, authorities, and powers that are set forth in the National Labor Relations Act, then you come to us to present that. It is highly un- there's no authority for a court sitting in review of an arbitration award, decides in the first instance whether the National Labor Relations Act is violated or not, whether it is against some kind of statutory policy or not. But do we have to decide whether it raises those issues or primarily a contractual question? At this stage, I interpret from the cases that have indicated the issue as the cases have considered whether it could have a pervasive curative effect to determine whether to order arbitration. But the validity of it, the weight of it, the scope of it, that is to the degree the National Labor Relations Board is involved, they determine that. And to be clear, I will be able to, you know, if and when they decide to go to the National Labor Relations Board, that the National Labor Relations Board has also considered you are not restricted in your voluntary agreements, in your freedom of contract, to what the National Labor Relations Act mandates or obliges. In other words, parties are free to agree to configurations of bargaining units, to inclusion of individuals that are not mandated by the National Labor Relations Act. And what's the best evidence here that they agreed to go beyond what was mandated under the Act? The language and interpreted by past practice and everything else. So it's really the past practice, because the arbitrator didn't really do much with what employee means. Harvard, without any citation, is suggesting a standard that has never been applied for arbitrators, which is they have to specifically find that there was an intentional subjective agreement that these individuals would be included. This is a unit that represents approximately 5,000 employees. At issue and litigated before the National Labor Relations Board was just a few dozen. So taking that logic, Harvard's argument to its logical extent, at any time in defense to any arbitration, it could say these individuals are not employees because you don't have evidence we specifically agreed to this one. The evidence, again, what an arbitrator does is interpret what is the intent of the parties. It doesn't require subjective intent. And the idea is one of the most valuable pieces of contract interpretation is past practice. Because if parties allow this kind of behavior, again, Harvard does not dispute. It includes employees or individuals in its bargaining unit that it now claims are analogous to the fellows it cites in the MIT case. In other words, it is effectively an admission because they don't dispute the science students being in that they also, according to their argument, are analogous to what the MIT case is. And nonetheless, they have been included for several years in the bargaining unit. If someone conducting research under the direction of a faculty member, even while doing so pursuant to an external grant in research, is considered employed by a research assistant for purposes of Article I and Article II, as a STEM student, it stands to reason that that same definition applies to this group of individuals here. Let me ask you one question. Aren't there any decisions from the NLRB, if I'm not mistaken, that reach the same result in other cases? Reach what same result? That these students can be considered by the arbitrator. You're talking about past practice, but I believe there's some NLRB prior, early decisions. Again, there is a decision in this case about individuals who are included, the individuals, the OEB doctoral students, who are just like the psychology doctoral students that she found. There, the NLRB found that these individuals are permanently assigned upon being admitted to Harvard to a lab. And they, based on their behavior, based on the facts that were found by the NLRB, fit within the unit, even though they didn't use the magic words employed by Harvard, they met the definition of the unit. That is, I think, directly analogous, or that is what she found, and I think that that is beyond challenge. But what is also clear is that what the NLRB... The arbitrator was not determining the NLRA status of these individuals, was not determining whether they are common law employees, was not determining whether they have rights to form a union or to organize. She was only deciding, do they meet the definition here? And what is clear, again, in a lot of cases is the NLRA or the NLRB may say, you are not employees, and so therefore you don't have a right to be in this group. But it is not true, as the employer puts in its reply brief, that the decision means they are banned or barred from organizing. Parties are still able to engage in voluntary agreements. Again, there is the United Dairies case that I cite, where there the employer agreed to a unit, and the employer later said, oh, we think some of these people are not statutory employees. And the National Labor Relations Board said, well, that's what you agreed to. And Harvard, in its reply brief, claims, well, they didn't say that they had a duty to bargain with those individuals. That's, in fact, almost literally what the National Labor Relations Board said. That they said, even if you believe some individuals are not employees, you cannot unilaterally change that or refuse to bargain about that. And that was upheld by the U.S. Supreme Court. I'm sorry, I apologize, not the U.S. Supreme Court, by a circuit court. So again, the idea is, the arbitrator here is looking at what did the parties agree to, effectively used the standard tools of looking at the entirety of the collective bargaining agreement, addressed the substantive arbitrability claims that Harvard raised, acknowledged and interpreted Articles 1 and Articles 2, made reference to them at the very beginning and in the end of the award. She did not refuse to address those issues, but regardless, I think if you look at the Labor Relations Division case that was cited, that this court is not determining whether there are imperfections or could have been explained better. Even if that were the case, and I don't think it is, the remedy would be for this court to remand this case to the arbitrator for a more detailed explanation of that. But that's not what they're asking for. They're asking for this to be tossed out, to have no bearing, and in effect, also it would prevent the National Labor Relations Board from considering this decision if the matter ever came before them. Okay. Anything else, Counsel? No, thank you. Okay, thank you. Three minutes for bubble. Please reintroduce yourself on the record to begin. Thank you. Robert Fisher for Harvard University. Counsel for the Union is conflating a couple of different things. So we agree that if a party thinks, for example, that an employer is going against the certified unit, they can go to the board and say, hey, they're violating the duty to bargain, they're not bargaining with us over the certified unit. That's the United Dairies case. United Dairies, the employer agreed that the unit of employees was a certain set, and then after agreeing to that, turned around and said, we're not going to bargain with you with some subset. And the unit in that case went to the board, and the board said, no, no, you can't do that. You agreed that these people were employees, you have to bargain with them. So that's one path. That's not this case. This is not a case in which the union is saying, Harvard agreed before the board that these individuals were in the unit, and then turned around and changed its mind, and then filed a failure to bargain charge. That's not this case. The other thing counsel for the union mentioned is this process of the board deferring to arbitration. And he made it seem like if a party doesn't like an arbitrator's decision, they have this natural recourse to the board. That's not the case. So if a party goes to the board and said, we want to clarify the unit by filing a unit clarification petition, and says, we think the unit should include some set of people, they can do that, and the board then decides whether or not those people should be added in or not. And we both cite some cases to you where at some point the board says, we're going to defer to arbitration, and at some point it says, no, we're not going to defer to arbitration. And the touchstone about whether they do or not is whether the issue is one involving statutory policy. So if it's a question of what the bargaining unit is, the board says, we don't defer that. And then if they do defer, because I think it's a contractual issue, so there's one case, I think it's the St. Mary's case, where they deferred to an arbitrator's determination about a 600-hour training requirement. Purely contractual language. What the board said there is, come back to us after the award, and we'll make sure that the decision is consistent with the act. None of that happened here. This isn't a case where the union went to the board and it got deferred to arbitration. They went straight to an arbitrator. And so all of the cases they're citing about you can't collaterally attack an agreement, that's what the union did here. They turned around and said, we agreed before the board that only employees are in this unit, only those students employed by Harvard are in this unit, but we're going to use arbitration to do an end run around that certification. None of the cases the union described is that fact pattern. I have a question. I thought the basis, I thought your arbitrability basis was timeliness. You seem to be arguing something akin to subject matter, lack of arbitrability, in that last statement that you made. Your Honor, there is a timeliness issue. We did not raise it on appeal, given this court's decisions on timeliness issues, but the fundamental issue is one of substantive arbitrability, which is the question of who is in the unit is undisputedly an issue for the board to decide. So we're not asking this court to decide that question, but we're saying to the extent the union wanted to change the unit, its recourse was to go to the board, which it didn't do. That's the substantive arbitrability issue. Okay. Thank you, Counsel. Thank you, Your Honor. Court is adjourned until tomorrow.